THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KELVIN GRADDY, an individual, KAVELLE FIELDS, an individual, 4K COIN, LLC, a Georgia limited liability company, KVG INVESTMENTS LLC, a Utah limited liability company, and THE KD9 GROUP, LLC, a Georgia limited liability company, <br><br>               Plaintiffs, <br><br> v. <br><br> CARNEGIE ACADEMY, LLC, d/b/a PROSOURCE TAX LIENS a/d/b/a TAX LIEN TOUR, a Utah limited liability company, SPROUT CF FUND, INC., a Utah corporation, SPROUT IRA, LLC, a Utah limited liability company, SPROUT FINANCIAL, LLC, d/b/a SPROUT ADVISORS a/d/b/a SPROUT ADVISERS, a/d/b/a SPROUT IRA, a Utah limited liability company, SPROUT INVESTMENT PARTNERS, LLC, a Utah limited liability company, SPROUT RESIDENTIAL FUND, LLC, a Utah limited liability company, JOSHUA CARR, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, EDWARD STEWART, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, and REI HOLDINGS, LLC, a Utah limited liability company, SLICKROCK, LLC, a Nevada limited liability company, SILVERSTRAND, LLC, d/b/a SAVILE CUSTOM CLOTHIERS, | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [60] DEFENDANTS' MOTION TO COMPEL ARBITRATION AND IN THE ALTERNATIVE TO DISMISS** <br><br> Case No. 2:22-cv-00222-DBB-CMR <br><br> District Judge David Barlow |

|  |  |
| --- | --- |
| a/d/b/a SAVILE ROW, a/d/b/a SAVILE TAILORS, a Utah limited liability company, TONYA NEFF, individually and in her capacity as an owner/member/executive/alter ego of NEFF COMPANIES, INC., a Utah corporation, ZULU MARKETING d/b/a TAX LIEN BUYERS CLUB a/d/b/a TAX LIEN VAULT a/d/b/a MELTDOWN MILLIONAIRE a/d/b/a TAX LIEN OFFICE, a Utah limited liability company, SUPERSTAR LLC, d/b/a SUPERSTAR INC., a/d/b/a SUPERSTAR LLC, a Utah limited liability company, MAN MADE LLC, d/b/a NINES CLOTHING a/d/b/a CANVAS CLOTHING a/d/b/a CANVAS CLOTHIERS, a Utah limited liability company, and KEYSTONE INVESTMENT GROUP, LLC, a Georgia limited liability company, |  |
| Defendants. |  |

In February 2021, Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC (collectively "Plaintiffs") sued Defendants, alleging several torts and several statutory violations under state and federal law.[1] Now, Defendants move to compel arbitration, and in the alternative, to dismiss Plaintiffs' Complaint.[2] For the following reasons, the court grants in part and denies in part Defendants' Motion.

---

[1] Compl. ¶¶ 1–23, 82–232, ECF No. 1.
[2] Defs.' Mot to Compel Arbitration and in the Alternative to Dismiss ("Def.s' Mot."), ECF No. 60; *see also* Defs. Carnegie and REI's Mot. to Compel Arbitration, Stay, and/or Dismiss, ECF No. 68 (clarifying that Defendants Carnegie Academy and REI Holdings joined the initial Motion).

## BACKGROUND

In 2019, Mr. Graddy and Ms. Fields purchased several products—for a total cost over $60,000—offered by ProSource purportedly aimed at training them to invest in tax liens.[3] ProSource represented that it would help trainees "make more money than they borrowed."[4] Because of the training offered by ProSource, Mr. Graddy and Ms. Fields purchased ancillary products, spent money creating limited liability entities, and incurred debt in purchasing tax liens.[5] It was only after Plaintiffs' purchased property subject to tax liens that they realized that flipping those properties was not as simple as ProSource made it out to be.[6] Thus, Plaintiffs commenced this lawsuit on February 12, 2021.[7]

Because this case involves a number of different individuals and entities, the court pauses to clarify who is who and what the Complaint alleges about each Defendant. Mr. Graddy and Ms. Fields are business partners who purchased educational materials related to tax liens offered by Defendant ProSource.[8] Over the course of their relationship, Mr. Graddy and Ms. Fields entered into three contracts with ProSource: A Prosource Tax Lien Program order ("ProSource Order"),[9] an Advanced Enrollment Form,[10] and an Enrollment Agreement.[11] Mr. Graddy and Ms. Fields attended several workshops hosted by ProSource.[12] Notably, the Complaint alleges

---

[3] Compl. ¶¶ 35, 40–45, 58–65.
[4] Id. ¶¶ 41–42.
[5] Id. ¶¶ 37–38, 51–57, 66, 68, 71, 75, 80.
[6] Id. ¶¶ 69, 81.
[7] See Compl.
[8] See id. ¶¶ 35, 40–48.
[9] Id. ¶ 35; ProSource Tax Lien Program ("ProSource Order"), ECF 39-1.
[10] Compl. ¶ 45; Advanced Enrollment Form, ECF 39-2.
[11] Compl. ¶ 65; ProSource Enrollment Agreement, ECF No. 1, Exh. N.
[12] See Compl. ¶¶ 35, 40–44, 58–63.

that Silverstrand LLC charged Mr. Graddy for a portion of the purchase price of the workshop detailed on the Advanced Enrollment Form.[13]

Next, the Complaint alleges that Mr. Graddy entered into an agreement with Sprout IRA, under which Sprout IRA was to create and register KVG Investments LLC for Mr. Graddy in exchange for around $950.[14] KVG Investments was created to hold an IRA retirement account and to purchase tax liens.[15] In March 2019, 4K Coin LLC—an entity controlled by Mr. Graddy—entered into an agreement with REI Holdings, LLC, under which REI holdings was to assign three tax liens to 4K Coin in exchange for $2,244.84.[16] Mr. Edward Stewart signed this agreement on behalf of REI Holdings.[17] Speakers at one of ProSource's workshops had advertised the products offered by REI Holdings.[18]

Regarding the remaining Defendants, the Complaint contains only general allegations. Slickrock LLC, Neff Inc., Zulu Marketing, Superstar, Inc., ManMade LLC, and Keystone Investment Group are alleged to be somehow involved in a RICO enterprise with ProSource, REI, and Sprout.[19] Mr. Carr and Mr. Stewart are alleged to be executives of ProSource, REI Holdings, Sprout, and Zulu Marketing.[20] Ms. Neff is alleged to be an executive of Sprout.[21]

Relevant to Defendants' Motion is that two of the five agreements in this case contain an arbitration provision. The ProSource Order states:

---

[13] *Id.* ¶ 64.
[14] Compl. ¶ 37; *see also* IRA Setup Agreement, ECF No. 1, Exh. D.
[15] Compl. ¶ 37.
[16] Compl. ¶¶ 66, 67; *see also* Tax Lien Assignment Agreement, ECF No. 1, Exh. O.
[17] Compl. ¶ 67.
[18] *Id.* ¶ 61.
[19] *Id.* ¶ 148.
[20] *Id.* ¶¶ 15, 16.
[21] *Id.* ¶ 17.

> You and the Company hereby agree that all disputes, controversies or claims that arise between you concerning any aspect of this Purchase Order or the relationship between you, shall be decided exclusively in binding arbitration in a reasonably convenient location. The arbitration shall be conducted on a confidential basis and administered by the American Arbitration Association ("AAA") pursuant to its Commercial Arbitration Rules; provided, however, that before resorting to arbitration, the parties agree to endeavor first to settle the dispute by mediation administered by the AAA pursuant to its Commercial Mediation Procedures.[22]

The Advanced Enrollment Form contains a provision identical in all respects, save that it states that the arbitration "shall [take place] in Nevada or Clark County, State of Nevada."[23] In other words, of all the parties to this lawsuit, only Mr. Graddy, Ms. Fields, and ProSource contractually agreed to arbitrate their disputes.

After some Defendants were voluntarily dismissed,[24] the Northern District of Georgia transferred the case to this court pursuant to forum selection clauses in some of the agreements.[25] Now, Defendants move to compel arbitration and in the alternative to dismiss Plaintiffs' complaint.[26] Plaintiffs filed their response on September 15, 2023,[27] and Defendants filed their reply on October 16, 2023.[28] The court ordered supplemental briefing,[29] which was concluded on December 19, 2023.[30]

---

[22] ProSource Order 2.
[23] Advanced Enrollment Form 2.
[24] Stipulation of Dismissal with Prejudice of All Claims Against Seed Consulting, LLC, ECF No. 44.
[25] Opinion and Order 8–18, ECF No. 46.
[26] Def.'s Mot.
[27] Pls.' Resp. to Defs.' Mot. to Compel Arbitration and in the Alternative to Dismiss ("Pls.' Resp."), ECF No. 64.
[28] Defs.' Reply in Support of Mot. to Compel Arbitration and in the Alternative to Dismiss ("Defs.' Reply"), ECF No. 65.
[29] ECF No. 67.
[30] *See* Non-Signatory Defendants' Brief in Support of Mot. to Compel Arbitration ("Defs.' Supplemental Brief"), ECF No. 71; Plaintiffs' Brief in Further Support of Plaintiffs' Resp. to Defendants' Mot. to Compel Arbitration ("Pls.' Supplemental Brief"), ECF No. 72; Non-Signatory Defendants' Resp. in Opp'n to Plaintiffs' Argument ("Defs.' Supplemental Reply"), ECF No. 74.

## STANDARD

The Federal Arbitration Act ("FAA") "provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration [FAA § 3], and an affirmative order to engage in arbitration [FAA § 4]."[31] Section 3 of the FAA reads:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration upon such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[32]

Section 4 of the FAA reads:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.[33]

In deciding a motion to compel arbitration, courts use a framework "similar to summary judgment practice."[34] Where "the parties dispute the existence of an agreement to arbitrate, a court may grant a motion to compel arbitration if 'there are no genuine issues of material fact regarding the parties' agreement.' Courts 'should give to the opposing party the benefit of all

---

[31] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).
[32] 9 U.S.C. § 3.
[33] *Id.* § 4.
[34] *Hancock v. Ame. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

reasonable doubts and inferences that may arise.'"[35] However, when addressing whether a dispute is arbitrable "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[36]

## DISCUSSION

In this case, the preliminary question is whether the parties must be sent to arbitration. This requires the court to address three issues: (A) whether this court has authority to compel arbitration; (B) whether the issue of arbitrability is for the arbitrator to decide; and (C) whether non-signatories are bound by and may enforce an arbitration agreement.

### A.  Whether this Court has Authority to Compel Arbitration

Plaintiffs argue that this court does not have authority to order arbitration in this case because the arbitration agreements at issue compel arbitration outside this district.[37] This argument is premised on FAA § 4, which states that in cases in which a district court orders "the parties to proceed to arbitration in accordance with the terms of the[ir] agreement," "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."[38]

In *Ansari v. Qwest Communications Corp.*, the Tenth Circuit held that FAA § 4 means that "where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under [FAA] § 4."[39] However, in *Image Software, Inc. v.*

---

[35] *Id.* (quoting *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)).
[36] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S at 24–25).
[37] Pls.' Supplemental Brief 20–22.
[38] 9 U.S.C. § 4.
[39] 414 F.3d 1214, 1219–20 (10th Cir. 2005).

*Reynolds & Reynolds Co.*, the Tenth Circuit clarified that this is a venue rule, not a jurisdictional rule.[40] And of course, objections to venue may be waived if not timely raised.[41]

An objection to venue is ordinarily waived if a party fails to raise that issue in a responsive pleading or in a motion under Federal Rule of Civil Procedure 12(b)(3).[42] But that rule typically applies to defendants. In this context, the Tenth Circuit has held that plaintiffs waive any objection to an FAA § 4 order to compel arbitration when they fail to raise the venue issue before the district court.[43] Two facts suggest the same result here.

First, in this case, venue was already transferred from the Northern District of Georgia to this district. Plaintiffs did not raise FAA § 4 in their briefing surrounding Defendants' Motion to Transfer.[44] This is especially probative because Defendants had also moved to compel arbitration, and Plaintiffs did not raise the issue in that briefing either.[45] The court concludes that just as defendants must raise an objection to venue in a responsive pleading or in a motion under Rule 12(b)(3), plaintiffs must raise an objection to a transferee venue before such a transfer is made, at least on a record like this one.

Second, Plaintiffs raise their objection to this court deciding the Motion to Compel only in supplemental briefing that was to be limited to the issue of "whether, assuming the arbitration clauses to be otherwise enforceable, the non-signatory Defendants can enforce the arbitration

---

[40] 459 F.3d 1044, 1052–55 (10th Cir. 2006); *accord Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1151–52 (10th Cir. 2014).

[41] *See Image Software*, 459 F.3d at 1055; *Sanchez*, 762 F.3d at 1152.

[42] Fed. R. Civ. P. 12(h)(1); *Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir. 1996).

[43] *See Image Software*, 459 F.3d at 1055; *Sanchez*, 762 F.3d at 1152.

[44] *Cf.* Pls.' Resp. in Opp'n to Defs.' Mot. to Transfer Pursuant to 28 U.S.C. § 1404(a) or, in the Alternative, Mot. to Compel Arbitration and Stay Proceedings, ECF No. 41.

[45] *Cf.* Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, or Mot. to Dismiss for Improper Venue, or Alternatively, to Compel Arbitration and Stay/Dismiss the Case, ECF No. 42.

clauses in these contracts under Sections 3 and 4 of the [FAA]."[46] This reinforces the court's conclusion that Plaintiffs have waived any objection to this court resolving whether an order to compel arbitration is needed.

Therefore, because Plaintiffs have twice failed to raise any FAA § 4 objections in a timely manner, the court concludes that it has authority to compel arbitration.

### B.  Whether the Issue of Arbitrability Must be Sent to Arbitration

"[C]ourts presume that the parties intend courts, not arbitrators, to decide what [the Supreme Court has] called disputes about 'arbitrability.' These include questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'"[47] "On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration," including the existence of a condition precedent to an obligation to arbitrate.[48]

Importantly, while "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate," a party's challenge to the validity "of the precise agreement to arbitrate at issue" requires "the federal court [to] consider the challenge before ordering compliance with that agreement under [FAA] § 4."[49] Plaintiffs resist Defendants' Motion in part by suggesting that the agreements are invalid because the entirety of each contract is unconscionable.[50] Nothing in Plaintiffs' briefing

---

[46] *See* ECF No. 67.
[47] *BG Grp., PLC v. Republic of Arg.*, 572 U.S. 25, 34 (2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002))
[48] *BG Grp.*, 572 U.S. at 34–35 (citing *Howsam*, 537 U.S. at 85–86).
[49] *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010).
[50] *See* Pl.'s Opp'n 9–11.

suggests they are challenging the validity of the arbitration agreement specifically. Therefore, the court need not resolve this issue before determining whether the parties have agreed to arbitrate arbitrability.

Because courts presume that it is for courts, not arbitrators, to decide whether the parties have agreed to arbitrate, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so."[51] For example, in *Belnap v. Iasis Healthcare*, the parties "clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS [Judicial Arbitration and Mediation Association] Rules into the Agreement," and JAMS rules provided that the issue of arbitrability "shall be submitted and ruled on by the Arbitrator."[52] In other words, a finding of clear and unmistakable intent to arbitrate arbitrability "may be inferred from the parties' incorporation in their agreement of rules that make arbitrability subject to arbitration."[53]

Defendants argue[54] that such intent may be inferred here because the two agreements at issue state that "[t]he arbitration shall be conducted on a confidential basis and administered by the American Arbitration Association ('AAA') pursuant to its Commercial Arbitration Rules."[55] AAA Rule R-7 reads:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.[56]

---

[51] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (cleaned up)); *accord Belnap*, 844 F.3d at 1281.
[52] *Belnap*, 844 F.3d at 1281 (quoting JAMS Rule 8(c)) (emphasis removed).
[53] *Id.* at 1290.
[54] Def.'s Mot. 13.
[55] ProSource Order 2; Advanced Enrollment Form 2.
[56] AAA Commercial Arbitration Rules and Mediation Procedures R-7, ECF No. 60-5.

Importantly, the Tenth Circuit has specifically held that an identical provision from the AAA Employment Arbitration Rules and Mediation Procedures incorporated by reference in a contract reflects a clear and unmistakable intent for the arbitrator to decide all issues of arbitrability.[57] And the Supreme Court has tacitly approved of this interpretation of the AAA rules.[58] This court is bound by Tenth Circuit precedent on this precise issue; incorporation by reference of the AAA rules shows the parties' clear and unmistakable intent to arbitrate arbitrability.

However, Plaintiffs argue that a condition precedent has not been met.[59] The contracts state that "before resorting to arbitration, the parties agree to endeavor first to settle the dispute by mediation administered by the AAA pursuant to its Commercial Mediation Procedures."[60] While some non-binding cases have held that failure to satisfy a condition precedent requiring mediation rendered the arbitration provision inoperative,[61] two things convince the court that such decisions are unpersuasive. First, those cases predated or did not apparently consider the line of Supreme Court cases distinguishing between "questions of arbitrability" and mere "procedural questions."[62] And more recently, the Supreme Court has clarified this doctrine. In *BG Group*, the Court concluded that a clause requiring arbitration only after eighteen months had elapsed since the filing of a case with a court was procedural, and was therefore appropriate for

---

[57] *DISH Network, LLC v. Ray*, 900 F.3d 1240, 1245 (10th Cir. 2018). This decision is in accord with the weight of authority in other circuits. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (compiling cases).

[58] *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ---, 139 S.Ct. 524 (2019) (holding that there was no exception for "wholly groundless" disputes that would allow a court to decide issues of arbitrability when the parties' contract delegated that question to the arbitrator by incorporating by reference AAA rules).

[59] Pl.'s Opp'n 15–16.

[60] ProSource Order 2; Advanced Enrollment Form 2.

[61] *See, e.g.*, *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1291 (11th Cir. 2002); *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41, 44 (1st Cir. 2003).

[62] *E.g. Howsam*, 537 U.S. at 84.

arbitrators to decide first.[63] The court emphasized that the clause "determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all."[64] A condition precedent requiring the parties to first seek mediation before arbitration is quite similar, and therefore is also a procedural question presumptively for the arbitrator to decide. Second, the court's conclusion on this point is reinforced by the fact that it has already concluded that the parties intended for all questions of arbitrability to be sent to the arbitrator. This was not the situation in the cases cited by Plaintiffs.

Therefore, binding precedent dictates that it is for the arbitrator, not for the court, to determine whether the contract as a whole is unconscionable, whether it covers each of Plaintiffs' claims, and whether the condition precedent affects its jurisdiction. However, there remains the issue of whether non-signatory Defendants may join in the arbitration.

### C.  Enforcement by Non-Signatory Defendants

Only two of the five contracts at issue in this case include arbitration agreements.[65] The remaining three do not.[66] Thus, of all Defendants (all of whom have moved to stay this case and compel arbitration),[67] only ProSource is a party to the contracts containing an arbitration agreement.[68] And, of the five plaintiffs, only Mr. Graddy and Ms. Fields are party to the arbitration agreements.[69]

---

[63] *BG Grp.*, 572 U.S. at 35–36.
[64] *Id.* at 35.
[65] *See* ProSource Order 2; Advanced Enrollment Form 2.
[66] *Cf.* ProSource Enrollment Agreement; IRA Setup Agreement; Tax Lien Assignment Agreement.
[67] *See supra* note 2.
[68] *See* ProSource Order; Advanced Enrollment Form.
[69] *See* sources cited *supra* note 68.

The Supreme Court has held that a party may seek to stay a proceeding under FAA § 3 "if the relevant state law allows him to enforce the agreement."[70] The Tenth Circuit has extended this to a motion to compel arbitration under FAA § 4.[71] Therefore, that a party to a lawsuit is not a signatory of a contract containing an arbitration provision does not itself categorically foreclose the party from invoking Section 3 or Section 4, though it does require an analysis under the relevant state law governing the agreement. The court requested supplemental briefing from the parties to aid it in deciding this issue.[72]

Briefly, there is the issue of whether non-signatory enforcement of an arbitration provision against both signatories and non-signatories is a question of arbitrability that the parties agreed to arbitrate. If it is, the court must send this issue to the arbitrator as well. In *Belnap*, the Tenth Circuit's treatment of the issue suggested that it was not.[73] And while some courts have held otherwise,[74] that is not the consensus by any means.[75] Therefore, at the very least because the arbitration provisions here do not mention arbitration between anyone other than signatories to the agreement,[76] the court concludes that even if enforcement by non-signatories is a question of arbitrability, the parties did not clearly and unmistakably agree to arbitrate it.[77]

---

[70] *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

[71] *Belnap*, 844 F.3d at 1293.

[72] *See* ECF No. 67.

[73] In *Belnap*, the Tenth Circuit first held that some parties had agreed to arbitrate arbitrability, *see Belnap*, 844 F.3d at 1280–84, and later held that non-signatories could not compel the plaintiff to arbitrate his claims against them, *see id.* at 1293–98. In other words, the Tenth Circuit, by reaching the issue of non-signatory enforcement, did not treat it as a question of arbitrability.

[74] *See, e.g., Blanton*, 962 F.3d at 848–49.

[75] *See, e.g., Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126–28 (9th Cir. 2013).

[76] *See* ProSource Order 2; Advanced Enrollment Form 2.

[77] *See Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580-KWR-KK, 2021 WL 979726, *7–8 (D.N.M. Mar. 16, 2021). The court also notes that this case is distinguishable from *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051 (10th Cir. 2018). There, the Tenth Circuit held that when the plain text of the arbitration provision itself

Defendants argue that three theories permit Non-Signatory Defendants to enforce the arbitration agreements and participate in the arbitration: agency, veil-piercing, and non-signatory estoppel.[78] After determining which state's law governs those theories, the court addresses Defendants' arguments.

### 1. Choice of Law

Federal courts typically use the choice of law rules for the state in which they sit.[79] But in *Van Dusen v. Barrack*, the Supreme Court held that when venue is transferred pursuant to 28 U.S.C. § 1404(a)—where venue was proper in the initial forum—"the transferee district court must be obligated to apply the state law that would have been applied if there had been no change in venue."[80] The Supreme Court later limited the *Van Dusen* holding: courts "will not apply the *Van Dusen* rule when a transfer stems from enforcement of a [valid] forum-selection clause."[81] Therefore, because this case was transferred from the Northern District of Georgia under 28 U.S.C. § 1404(a) pursuant to the forum selection clauses contained in several of the contracts, Utah's choice of law rules apply.[82]

---

foreclosed third-party enforcement, third parties could not compel arbitration. *Id.* at 1057–58. The provisions at issue here make no mention of who is to demand arbitration.

[78] Defs.' Supplemental Brief 5–11.

[79] *See Klaxton Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that federal courts sitting in diversity apply the conflict of law rules of the state in which they sit); *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (holding the rule from *Klaxton* "also applies when a federal court exercises supplemental jurisdiction over state law claims in a federal question lawsuit"). Plaintiffs suggest that "[t]he general rule is that in [sic] federal choice-of-law principles are used in resolving federal causes of action." Pls.' Supplemental Brief 10. But the case it cites for this proposition is inapposite. FAA § 4 is not itself a federal cause of action. *See Vaden v. Discover Bank*, 556 U.S. 49, 59, 62 (2009). And the Tenth Circuit has at least assumed that state choice of law rules apply to decide which state's substantive law governs arbitration contracts. *See Howard v. Ferrellgas Partners, LP*, 748 F.3d 975, 982 (10th Cir. 2014). Nevertheless, Plaintiffs, on the next page of their brief, argue that courts apply state choice of law rules. *See Pl.'s Supplemental Brief 11.

[80] *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

[81] *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 65–66 (2013).

[82] *See* Opinion and Order 13–17, ECF No. 46.

While the parties present a number of arguments related to choice of law,[83] the court concludes that it need not reach them. Under Utah's conflict of law rules, "a choice of law analysis is preceded by a determination of whether there is a true conflict between the laws of those states that are interested in the dispute."[84] Where there is no conflict, "a choice of law analysis is unnecessary."[85] "A true conflict exists if 'the outcome would differ depending on which state's law is applied.'"[86] The court finds that there is no conflict between Utah, Georgia, and Nevada law on the application of non-signatory estoppel.[87] And because the court holds that non-signatory estoppel applies in this case, the court need not reach the two other theories advanced by Defendants—agency and veil-piercing.

### 2. Non-Signatory Estoppel

Defendants argue that Plaintiffs should be estopped from avoiding arbitration where Plaintiffs allege the existence of contracts containing arbitration provisions and interconnected activities on the part of both signatory and non-signatory Defendants.[88]

---

[83] *See* Defs.' Supplemental Brief 5 (arguing that choice of law provisions in separate contracts should control the court's choice of law selection for the contracts at issue); Pls.' Resp. 8 (suggesting that Georgia law applies to one contract); Pls.' Supplemental Brief (suggesting Utah law applies that same contract). Notably, Plaintiffs also suggest that Nevada law controls the Advanced Enrollment Form because it has a choice of law clause. *See* Pls. Resp. 8 ("[T]he Advanced Enrollment provides that the 'laws of the State of Nevada shall govern this contract.'"). But no such language is apparent to the court.

[84] *One Beacon Am. Ins. Co. v. Huntsman Polymers Corp.*, 2012 UT App 100, ¶ 27 n.10, 276 P.3d 1156 (citing *Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 188 (Utah 1996)).

[85] *Applied Predictive Techs., Inc. v. MarketDial, Inc.*, 598 F.Supp.3d 1264, 1274 (D. Utah. 2022) (citing *St. Paul Fire & Marine Ins. v. Com. Union Assurance*, 606 P.2d 1206, 1208 n.1 (Utah 1980)).

[86] *Id.* (quoting *Johnson v. Blendtec, Inc.*, 500 F.Supp.3d 1271, 1279 (D. Utah 2020)).

[87] *See Ellsworth v. Am. Arb. Ass'n*, 2006 UT 77, ¶ 20, 148 P.3d 983; *id.* ¶ 20 n.12; *RUAG Ammotec GmbH v. Archon Firearms, Inc.*, 538 P.3d 428, 435 (Nev. 2023); *Price v. Ernst & Young, LLP*, 617 S.E.2d 156, 175–76 (Ga. Ct. App. 2005).

[88] Defs.' Supplemental Brief 9–11.

While the Utah Supreme Court "has never formally adopted" non-signatory estoppel, it has suggested the principle would be valid under Utah law.[89] Therefore, the court predicts that the Utah Supreme Court would adopt the three varieties of non-signatory estoppel it has previously articulated. These are: (1) when a "nonsignatory has sued a signatory on the contract to his benefit but [has] sought to avoid the arbitration provision of the same contract"; (2) "when [a nonsignatory] receives a 'direct benefit' from the contract which contains the arbitration clause"; and (3) when "the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory."[90] The first and the third varieties are relevant here.

In discussing the first variety, the Utah Supreme Court relied on the Fourth Circuit's explanation in *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH.*[91] There, the Fourth Circuit observed that generally, "[e]quitable estoppel precludes a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity."[92] More specifically, it would be inequitable for a party to simultaneously invoke a contract to its benefit, while disclaiming the arbitration provision in that contract.[93] And in discussing the third variety, the Utah Supreme Court cited to *Bridas S.A.P.I.C. v. Government of Turkmenistan*, a Fifth Circuit case.[94] *Bridas* explained that

---

[89] *Gold's Gym Int'l, Inc. v. Chamberlain*, 2020 UT 20, ¶ 45, 471 P.3d 170; *see also Ellsworth*, 2006 UT 77, ¶ 19 ("Mr. Ellsworth correctly points out that the nonsignatory estoppel exception has never been applied in Utah. Nevertheless, we know of no reason why it could not be, in the appropriate situation.").

[90] *Ellsworth*, 2006 UT 77, ¶ 20; *id.* n.12.

[91] *Id.* ¶ 19 (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir. 2000).

[92] *Int'l Paper Co.*, 206 F.3d at 417–18 (quoting *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough*, 81 F.3d 1310, 1317 (4th Cir. 1996)).

[93] *Id.* at 418.

[94] *Ellsworth*, 2006 UT 77, ¶ 20 (citing *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 360 (5th Cir. 2003).

the third variety of non-signatory estoppel was meant to prevent plaintiffs from relying on the duties imposed by an agreement containing an arbitration agreement while simultaneously resisting a motion to compel arbitration because a defendant was not party to the agreement.[95] Therefore, that variety "applies only to prevent 'a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'"[96]

Here, only Mr. Graddy and Ms. Fields were parties on the two contracts; the remaining plaintiffs—the entities they control—were not. Plaintiffs argue that this exception is inapplicable because not all of their claims are premised on the contract.[97] *All* Plaintiffs have asserted 11 claims against *all* Defendants: negligent misrepresentation; theft by deception, fraud, punitive damages, violation of the Georgia Fair Business Practices Act, violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), violation of Georgia's RICO statute, conspiracy to violate Georgia's RICO statute, piercing the corporate veil, unjust enrichment, and attorney fees.[98] The bulk of the claims allege that all Defendants are liable because they induced all Plaintiffs to enter into the contracts at issue in this case, including, at the very least, the Advanced Enrollment Form.[99]

The court concludes that the first and third varieties of non-signatory estoppel apply here. While Plaintiffs do not attempt to rely on the duties imposed by either of the relevant contracts,

---

[95] *Bridas*, 345 F.3d at 360–61.
[96] *Id.* (quoting *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (emphases removed)).
[97] Pls.' Supplemental Brief 16.
[98] Compl. ¶¶ 82–232.
[99] *See, e.g.*, *id.* ¶ 83 (negligent misrepresentation on the Advanced Enrollment Form (referred to as the "DEP")); *id.* ¶ 92 (theft by deception related to the Advanced Enrollment Form); *id.* ¶ 101 (fraud related to the Advanced Enrollment Form); *id.* ¶ 123 (violation of the Georgia Fair Business Practices Act related to the Advanced Enrollment Form).

they do seek to rely on the existence of the contract to establish that they were injured by Defendants' conduct. And Plaintiffs do not distinguish either amongst themselves or Defendants for purposes of who was party to the contracts and who was not. Instead, Plaintiffs generally allege that all Defendants harmed all Plaintiffs, in part by inducing Plaintiffs to enter into the contracts containing arbitration provisions. The claims made by both signatory and non-signatory Plaintiffs are inextricably intertwined with the claims made against both signatory and non-signatory Defendants. It would be inequitable for non-signatory Plaintiffs to seek to avoid arbitration after seeking to impose liability in part premised on the contracts, just as it would be inequitable for signatory Plaintiffs to seek to avoid arbitration with non-signatory Defendants after seeking to impose the same kind of liability.

Therefore, the court holds that all parties must attend arbitration pursuant to the arbitration agreements at issue. And because the court has held that arbitration is required, it need not reach Defendants' arguments regarding dismissal.

## ORDER

Accordingly, the court GRANTS in part and DENIES in part Defendants' Motion. The parties are ORDERED to submit to arbitration according to the terms of the ProSource Order and the Advanced Enrollment Form. The parties shall meet and confer within 30 days of this Order to determine a location for the arbitration and to select an arbitrator. The parties shall provide a status report to the court 30 days after they meet and confer, and every 90 days thereafter. This case is stayed. The court will retain jurisdiction for purposes of post-arbitration proceedings.

Signed February 15, 2024.

BY THE COURT

_____
David Barlow
United States District Judge